*MATT LAW OFFICE, PLLC*
*Terryl T. Matt, Esq.*
*Joseph F. Sherwood, Esq.*
310 East Main Street
Cut Bank, MT  59427
Telephone:  (406) 873-4833
Fax No.:     (406) 873-0744
terrylm@mattlawoffice.com
joes@mattlawoffice.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, GREAT FALLS DIVISION

PARDEEP KUMAR,

     Plaintiff,

vs.

PATRICK SCHILDT, VIOLET SCHILDT, KENNETH BIRD, in his individual and official capacity, and LAURA SOLLARS, in her individual and official capacity,

     Defendants.

Cause No.: CV-24-65-GF-JTJ

**VERIFIED COMPLAINT AND JURY DEMAND**

Plaintiff, Pardeep Kumar (the "Plaintiff"), by and through the

undersigned counsel of record, Terryl T. Matt, of Matt Law Office, PLLC,

VERIFIED COMPLAINT AND JURY DEMAND - 1

1  now complains and alleges against Defendants, PATRICK SCHILDT,

2  VIOLET SCHILDT, KENNETH BIRD, in his individual and official

3  capacity, and LAURA SOLLARS, in her individual and official capacity,

4  (collectively, the "Defendants"), as follows:

## PARTIES, JURISDICTION, AND VENUE

6  1.      Plaintiff is a resident of Valier, Pondera County, Montana.

7  Plaintiff is the sole owner and operator of Toora Brothers, Inc. d/b/a Glacier

8  Way C-Store, a corporation registered in the State of Montana, with a

9  principal address of 99 Highway 464, Browning, MT 59417.

10  2.      At all times relevant herein, Defendant Patrick Schildt is an

11  individual who resides in East Glacier, Montana and has conducted

12  business in Browning, Montana under the name Glacier Way C-Store, LLC.

13  3.      At all times relevant herein, Defendant Violet Schildt is an

14  individual who resides in East Glacier, Montana.  She is the mother of

15  Patrick Schildt and has helped him conduct business in Browning,

16  Montana under the name Glacier Way C-Store, LLC.

17  4.      At all times relevant herein, Defendant Kenneth Bird is the

Superintendent of the Bureau of Indian Affairs ("BIA"), Blackfeet Agency.

VERIFIED COMPLAINT AND JURY DEMAND - 2

1   He is an officer and employee of the United States and is sued in his official

2   and individual capacity.  At all times relevant herein, Defendant Bird was

3   acting under color of federal law.

4       5.      At all times relevant herein, Defendant Laura Sollars is the

5   Deputy Superintendent of the BIA, Blackfeet Agency.  She is an officer and

6   employee of the United States and is sued in her official and individual

7   capacity.  At all times relevant herein, Defendant Sollars was acting under

8   color of federal law.

9       6.      The actions giving rise to this Complaint occurred in Montana.

10      7.      This Court has jurisdiction over the claims against Defendants

11  Bird and Sollars under 28 U.S.C. § 1331 because this is "a civil action

12  arising under the Constitution . . . of the United States."  This Court further

13  has jurisdiction over the claims against Defendants Bird and Sollars

14  pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of*

15  *Narcotics*, 403 U.S. 388 (1971), which authorizes suits against federal

16  officials acting under color of federal law for violation of certain

17  constitutional rights.

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 also because adjudication of the controversy requires interpretation, construction, and application of the laws of the United States.  Whether the Blackfeet Tribal Court has adjudicative authority over nonmembers and federal agents is a federal question, *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008).

9.    This Court has supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367(a).

10.    This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201(a).

11.    To the extent exhaustion of federal administrative remedies is required, Plaintiff has complied with this requirement.  Plaintiff sent a letter on May 31, 2022 to the BIA, Rocky Mountain Regional Office, requesting the BIA confirm that Plaintiff's transaction with Patrick Schildt and Violet Schildt required approval of the Secretary of the Interior and if so, to determine whether the Secretary approved the transaction.  The BIA did not respond.

12.     Exhaustion of remedies in Tribal Court is a discretionary rule based upon comity; it does not deprive the Court of subject matter jurisdiction. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 n.8 (1987); *Strate v. A-1 Contrs.*, 520 U.S. 438, 453 (1997).  To the extent exhaustion of tribal remedies is required, Plaintiff indeed has exhausted such remedies. There is nothing more that the Blackfeet Court of Appeals and Blackfeet Tribal Court can do now that the BIA and its agents have interfered with and prevented enforcement of tribal orders. Requiring Plaintiff to continue pursuing a legal remedy in the tribal forum will result only in delay.  In addition, pursuing a remedy in the tribal forum is futile given the conflict of interest between the current Attorney General of the Tribal Court, Dawn Gray, who was paid to draft the Contract for Deed and Commercial Use Agreement by Plaintiff and Defendant Patrick Schildt, and who is now responsible in her role as Tribal Attorney General for approving the Blackfeet Appellate Court justices' contracts.

13.     A substantial part of the events or omissions giving rise to the claim have occurred in this District, therefore venue is proper in this Court pursuant to 28 U.S.C. § 1391 and L.R. 3.2(b).

VERIFIED COMPLAINT AND JURY DEMAND - 5

## ALLEGATIONS COMMON TO ALL COUNTS

14.    Plaintiff repeats and incorporates the allegations of the foregoing paragraphs.

15.    Plaintiff is the sole owner of Toora Brothers Inc., located at 99 Highway 464, Browning, MT 59417.

16.    Plaintiff, on behalf of Toora Brothers, purchased the Glacier Way C-Store in March 2020, pursuant to a Contract for Deed with Patrick Schildt and Violet Schildt (collectively, the "Schildts"). In addition to the real property of the business (the "Subject Property"), the purchase also included inventory, equipment, and supplies from the business for $1.1 million.

17.    Also in March 2020, Plaintiff and the Schildts executed a Commercial Property Use Agreement pursuant to which the Schildts assigned the use of the Subject Property to Plaintiff for the duration of the Contract for Deed. True copies of the Contract for Deed and Commercial Use Agreement are submitted with this Complaint as **EXHIBIT 1** and **EXHIBIT 2**.

18.    The Contract for Deed provides that, "[i]n case of Sellers' failure to deliver title pursuant hereto, the amount of all payments made by Purchaser shall be a lien upon said property in favor of Purchaser to secure the return of said payments to Purchaser, except insofar as there shall exist a claim against any title insurance."  Exhibit 1, ¶ 14.

19.    Plaintiff paid to the Schildts $314,000.00, including the down payment of $50,000, and he has made all monthly payments to the Schildts pursuant to both agreements.

20.    Plaintiff also purchased various inventory and business supplies for the Subject Property and took the necessary steps to insure the Subject Property by purchasing an insurance policy for the business.

21.    Plaintiff also made improvements to the Subject Property in anticipation of ownership.

22.    At the time of the transaction, the Schildts informed Plaintiff that the sale complied with Section 3 (Land Acquisition Policies) of the 2019 Blackfeet Land Acquisition Ordinance No. 116 (the "Ordinance").  In the December 2021 letter, Plaintiff also requested evidence of compliance with the Ordinance.

1    23.    The Schildts did not respond to Plaintiff's letter directly or

2    through their counsel Dawn Gray, who had been employed and paid by

3    both the Schildts and Plaintiff to draft the Contract for Deed and

4    Commercial Use Agreement.

5    24.    Dawn Gray not only drafted the Contract for Deed and other

6    documents as the attorney for Schildts, but she is also married to the

7    brother of Patrick Schildt.  Dawn Gray served as the Blackfeet Tribe's lead

8    attorney in the legal department, and she is now the Tribal Attorney

9    General and is responsible for approving the Blackfeet Court of Appeals'

10    justices' contracts.

11    25.    It was not until a year-and-a-half later that Plaintiff learned that

12    the Subject Property is held in trust pursuant to the Act of June 18, 1934 (48

13    Stat. 984) or, alternatively, the Act of June 26, 1936 (49 Stat. 1967), thus

14    falling under the purview of various federal statutes.  Notably, 25 U.S.C. §

15    5134 provides that sales of trust lands require approval from the Secretary

16    of the Interior.  The Contract for Deed conspicuously lacks any mention of

17    these federal requirements or of the necessity of obtaining the Secretary's

consent for such a transaction.

VERIFIED COMPLAINT AND JURY DEMAND - 8

1    26.    Plaintiff subsequently discovered that, after he paid the

2  Schildts, they entered into a buy-sell agreement – negotiated by a Blackfeet

3  tribal attorney closely associated with Blackfeet Legal Counsel Dawn Gray

4  – to sell Glacier Way C-Store to the Blackfeet Tribal Business Council for

5  $7,705,600. True and correct copies of the sale agreements as approved by

6  the Blackfeet Tribal Council in two Resolutions are attached hereto as

7  **EXHIBIT 3** and **EXHIBIT 4**.

8    27.    When Plaintiff confronted the Schildts about the double sale,

9  the Schildts forcibly removed Plaintiff from the Subject Property and

10  prevented him from returning to the Subject Property .

11    28.    In May 2022, Plaintiff's counsel sent a letter to the BIA Rocky

12  Mountain Regional Office, enclosing a copy of the Contract for Deed and

13  requesting that the BIA confirm that the transaction required the approval

14  of the Secretary and, if so, determine whether the Secretary approved the

15  transaction.  Plaintiff's counsel did not receive a response to this letter.

16    29.    Upon information and belief, the Schildts did not seek or obtain

17  the approval of the Secretary for their entry into the Contract for Deed with

the Plaintiff.

VERIFIED COMPLAINT AND JURY DEMAND - 9

1    30.    Upon information and belief, Patrick Schildt's sale of the

2    Subject Property to the Blackfeet Tribal Business Council was never

3    completed.  Nevertheless, the Schildts have not upheld their obligations to

4    Plaintiff under the Contract for Deed or Commercial Use Agreement.

5    31.    On June 8, 2022, Plaintiff filed a complaint against the Schildts

6    and the BIA in federal court for declaratory judgment, breach of contract,

7    unjust enrichment/constructive trust, injunctive relief, and conspiracy in

8    restraint of trade in violation of 15 U.S.C. § 1.

9    32.    Plaintiff's federal court complaint was dismissed on September

10   19, 2022, by this Court for the following reasons: "Tribal court remains

11   available as an appropriate forum in which Kumar may seek relief. . . .

12   Kumar can seek review in federal court once he has exhausted his tribal

13   court remedies. . . ." *Kumar v. Schildt*, Case 4:22-cv-00054-BMM, Doc. 24,

14   (D. Mont. Sept. 19, 2022) (citations omitted).

15   33.    After dismissal of his federal court complaint, on November 15,

16   2022, Plaintiff filed his complaint in Blackfeet Tribal Court against the

17   Schildts and, on the same day, filed a motion for a Temporary Restraining

Order and Preliminary Injunction (the "Tribal TRO/PI").

1    34.    On January 30, 2023 the Tribal Court held a hearing and heard

2   testimony regarding Plaintiff's motion for TRO/PI.

3    35.    On August 8, 2023 the Tribal Court granted Plaintiff's request

4   for a TRO/PI, granting Plaintiff immediate possession of the Subject

5   Property to access his business and personal items located therein.

6    36.    However, the same day the TRO/PI was issued, the Schildts

7   appealed the TRO/PI to the Blackfeet Court of Appeals and requested a

8   stay of enforcement of the TRO/PI.

9    37.    On April 4, 2024, the Blackfeet Court of Appeals declined to

10   stay enforcement of the TRO/PI but ordered an expedited briefing

11   schedule.

12    38.    After the Blackfeet Court of Appeals denied the Schildts'

13   request to stay enforcement of the Tribal TRO/PI, the Blackfeet Tribal Court

14   judge issued a Writ of Execution of the Tribal TRO/PI directing the

15   Blackfeet Law Enforcement to assist in enforcing the order.

16    39.    On or about April 15, 2024, Plaintiff, his wife Sunita, Wendy

17   Judisch, Browning Police Department Chief Misty Salois, and Browning

1  Police Department Officer Sullivan met at the Subject Property to enforce

2  the TRO/PI.

3      40.    Shortly after Plaintiff and Blackfeet law enforcement officers

4  arrived at the Subject Property, Defendants Bird and Sollars arrived in

5  marked BIA vehicles.  Defendants Bird and Sollars stopped and detained

6  Plaintiff and informed him that Patrick Schildt had filed a complaint with

7  the BIA against Plaintiff for trespassing on Tribal Trust Land, and until

8  they could review it and make a decision on the complaint, Plaintiff would

9  need to remain off the Subject Property.

10      41.    The BIA agents also informed Plaintiff that he could be arrested

11  for criminal trespass if he attempted to access or possess the store that day.

12      42.    During Plaintiff's discussion with Defendants Bird and Sollars,

13  other BIA officers were observed in their vehicles in the parking lot of the

14  Subject Property.  The vehicles were unmarked but had exempt license

15  plates.  One was at the fuel pumps and the other was parked in the parking

16  lot.

17      43.    Plaintiff requested a copy of the BIA complaint filed by Patrick

Schildt but did not receive one.

VERIFIED COMPLAINT AND JURY DEMAND - 12

44.    Plaintiff left the Subject Property without being able to access it, despite the existence of a valid Tribal Court order granting him a right to possession of the Subject Property.

45.    It was not until weeks later, and only after Plaintiff filed a motion to re-open his federal court case, that the BIA acknowledged it recognizes the tribal TRO/PI.

46.    On July 16, 2024, the Blackfeet Court of Appeals issued a troubling Opinion that voided the Tribal Court's TRO/PI issued in favor of Plaintiff on the sole basis that Plaintiff had not paid a security prior to seeking the TRO/PI.  In the Opinion, the Blackfeet Court of Appeals cited the lower court judge's failure to follow current Blackfeet statutes when issuing the TRO/PI that required the Plaintiff to pay a security, even though there is no substantive difference between the two statutes.  Instead of simply remanding for an order to require Plaintiff to pay a security, the Court of Appeals vacated the Order while alarmingly ignoring the Defendants' numerous violations of tribal law, failing to analyze any

1    elements of whether the TRO/PI standard, and neglecting to review the

2    lower court transcript when issuing its rationale.[1]

3        47.    Even though the Blackfeet Court of Appeals has voided the

4    TRO/PI, at the time Plaintiff sought to enforce the order and was detained

5    by Defendants Bird and Sollars, the Tribal TRO/PI was a valid and

6    enforceable order.

7        48.    Given the Tribal Court's actions, Plaintiff is left without an

8    adequate remedy within the tribal forum.  Requiring Plaintiff to continue

9    in the tribal forum would be futile and only delay the proceedings further.

10   In addition, the involvement of the Bureau of Indian Affairs in the

11   deprivation of Plaintiff's rights now warrants federal court jurisdiction to

12   address these federal constitutional violations and provide a proper avenue

13   for relief.

### COUNT I:
### DECLARATORY JUDGMENT
### (against Defendants Patrick Schildt and Violet Schildt)

---

[1] Due to the BIA agents' recent involvement, the Blackfeet Court of Appeals Justices questioned their continuing jurisdiction over the case during oral argument held on July 10, 2024.  A transcript of the oral argument is being requested and will be submitted to the Court once received.

1    49.    Plaintiff repeats and incorporates the allegations of Paragraphs

2    1 through 48 above herein.

3    50.    28 U.S.C. § 2201(a) authorizes this Court, "[i]n a case of actual

4    controversy within its jurisdiction, . . . [to] declare the rights and other legal

5    relations of any interested party seeking such declaration, whether or not

6    further relief is or could be sought."

7    51.    The Schildts' intention to sell the Subject Property to the

8    Council gives rise to an actual controversy between Plaintiff and the

9    Schildts. The Schildts cannot comply with the Contract for Deed and at the

10   same time transfer the Subject Property to the Council.

11   52.    Schildts have failed and refused to provide evidence to Plaintiff

12   of their compliance with 25 U.S.C. § 5134. Plaintiff seeks a declaration that

13   Schildts were required to obtain the Secretary's approval of the Contract

14   for Deed.

15   53.    Plaintiff seeks a declaration that, absent approval by the

16   Secretary, the Schildts cannot perform their obligation under the Contract

17   for Deed to transfer title to the Subject Property to the Plaintiff.

1  54. Plaintiff also seeks supplemental relief in the form of the

2 attorney fees necessarily incurred to determine his rights under the

3 Contract for Deed, pursuant to 28 U.S.C. § 2202 and M.C.A. § 27-8-313.

4 Equitable considerations support such an award. The Schildts entered into

5 the Contract for Deed and have accepted payments made under it, but they

6 have failed and refused to respond to Plaintiff's inquiries concerning

7 approval of the transaction by the Secretary.  Their entry into the Sale

8 Agreements with the Council, while they remain subject to contractual

9 obligations to Plaintiff, necessitated the filing of this action.  The

10 declaratory relief sought is necessary to change the status quo, with

11 Plaintiff making payments to the Schildts under a contract they likely are

12 precluded from performing, depriving Plaintiff of the benefit of his

13 bargain.

14  55. Plaintiff seeks a declaration that Plaintiff has a lien on the

15 Subject Property in the amount of all payments Plaintiff has made to the

16 Schildts to secure the return of such payments to him, plus interest and

17 attorney fees and costs, and that this lien shall attach to the proceeds paid

to the Schildts pursuant to the Sale Agreements.

1

2 ## COUNT II:
## BREACH OF CONTRACT
3 ### (against Defendants Patrick Schildt and Violet Schildt)

4   56.    Plaintiff repeats and incorporates the allegations of Paragraphs

5 1 through 48 above herein.

6   57.    The Schildts' entry into the Contract for Deed without

7 obtaining the necessary approval of the Secretary constitutes breach of the

8 Contract for Deed.

9   58.    The Schildts' attempted sale of the Subject Property to the

10 Blackfeet Tribal Business Council is in breach of the Schildts' obligation to

11 deliver title to the Subject Property to Plaintiff pursuant to the Contract for

12 Deed.

13   59.    The determination whether the Schildts have breached the

14 Contract for Deed requires construction of federal law governing the

15 negotiated transfer of trust property.

16   60.    The Schildts' removal of Plaintiff from the Subject Property was

17 in breach of the quiet use and enjoyment provision of the Agreement.

61.    Plaintiff has incurred damages as a result of the Schildts' breach of contract, including anticipated lost profits.

### COUNT III:
### UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST
### (ALTERNATIVE TO COUNT II)
### (against Defendants Patrick Schildt and Violet Schildt)

62.    Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 48 above herein.

63.    In the event this Court finds the Contract for Deed unenforceable, Plaintiff's payments provided for in the Contract for Deed conferred a benefit on the Schildts.

64.    The Schildts received and retained these payments, appreciating the benefit conferred on them.

65.    It is inequitable to allow the Schildts to retain the payments under the Contract for Deed, while failing to convey the Subject Property to the Plaintiff.

66.    Plaintiff's improvements to the Subject Property also conferred a benefit on the Schildts.  It would be inequitable to allow the Schildts to retain the benefit of these improvements without compensating Plaintiff.

67.    Plaintiff's purchase of inventory also conferred a benefit on the

Schildts, because the inventory remains in the Subject Property from when

they removed Plaintiff.

68.    The Schildts' unjust enrichment justifies the imposition of a

constructive trust on the funds Plaintiff paid to the Schildts under the

Contract for Deed and Commercial Use Agreement.

**COUNT IV:**
**VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED**
**STATES CONSTITUTION**
**(against Defendants Bird and Sollars)**

69.    Plaintiff repeats and incorporates the allegations of Paragraphs

1 through 48 above herein.

70.    This cause of action is based on *Bivens v. Six Unknown Federal*

*Narcotic Agents*, 203 U.S. 388 (1971).

71.    The Fourth Amendment to the United States Constitution

safeguards the Plaintiff's fundamental right to be free from unreasonable

searches and seizures. (U.S. Const. amend. IV, protecting the "right of the

people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures[.]").

VERIFIED COMPLAINT AND JURY DEMAND - 19

1   72.    Defendants Bird and Sollars, acting under color of federal law,

2   deprived Plaintiff of his Fourth Amendment right to be free unreasonable

3   search and seizure.  Specifically, Defendants Bird and Sollars detained

4   Plaintiff at the Subject Property and prevented him from accessing or

5   possessing the Subject Property without reasonable suspicion or probable

6   cause that crime was being committed.

7   73.    Upon information and belief, Defendants Bird and Sollars

8   lacked a valid search warrant to enter the premises and detain Plaintiff

9   Kumar. Absent an exigent circumstance, a warrantless search is

10  presumptively unreasonable under the Fourth Amendment. (*Morgan v.*

11  *U.S.,* 323 F.3d 776, 780-81 (9th Cir. 2003); U.S. Const. amend. IV).

12  74.    The conduct alleged herein caused Plaintiff to be deprived of

13  his civil rights that are protected under the United States Constitution.

14  Defendants' conduct has legally, proximately, foreseeably, and actually

15  caused Plaintiff damages in an amount to be proven at trial.

16  75.    Defendants' conduct was and continues to be unlawful,

17  intentional, purposeful, and knowingly, and with conscious disregard of

the certainty that Plaintiff would suffer injury as a result.  This conduct on

VERIFIED COMPLAINT AND JURY DEMAND - 20

1 the part of the Defendants' clearly and convincingly demonstrates

2 reprehensible conduct.

### COUNT V:
### VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (against Defendants Bird and Sollars)

76.    Plaintiff repeats and incorporates the allegations of Paragraphs 1 through 48 above herein.

77.    This cause of action is based on *Bivens v. Six Unknown Federal Narcotic Agents,* 203 U.S. 388 (1971).

78.    The Fifth Amendment to the United States Constitution safeguards Plaintiff's right to not be deprived of his liberty or property without due process of law. (U.S. Const. amend. V, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]").

79.    Defendants Bird and Sollars deprived Plaintiff of his Fifth Amendment right not to be deprived of liberty or property without due process of law.  Specifically, Defendants interfered with Plaintiff's property rights, established by a Tribal Court order that was valid and enforceable at the time, and that was known to Defendants at the time, and deprived

1   Plaintiff of his liberty interest and property interest by preventing Plaintiff

2   from accessing, possessing, or using the Subject Property upon threat of

3   criminal prosecution.

4       80.    The conduct alleged herein caused Plaintiff to be deprived of

5   his civil rights that are protected under the United States Constitution.

6   Defendants' conduct has legally, proximately, foreseeably, and actually

7   caused Plaintiff to suffer damage in an amount to be proven at trial.

8       81.    Defendants' conduct was and continues to be unlawful,

9   intentional, purposeful, and knowingly, and with conscious disregard of

10  the certainty that Plaintiff would suffer injury as a result. This conduct on

11  the part of the Defendants clearly and convincingly demonstrates

12  reprehensible conduct.

**PRAYER FOR RELIEF**

14  Plaintiff prays for judgment against the Defendants as follows:

15      1.    A declaratory judgment that the Schildts were required to obtain

16  the Secretary's approval of the Contract for Deed before transacting with the

17  Plaintiff for the purchase of the Subject Property; that the Schildts' failure to

obtain approval of the Contract for Deed prevents the Schildts from

VERIFIED COMPLAINT AND JURY DEMAND - 22

1  performing their obligations under the Contract for Deed; and that Plaintiff

2  thus has a consensual lien in the amount of all payments Plaintiff has made

3  to the Schildts under the Contract for Deed and otherwise, including interest

4  and attorney fees, which lien shall attach to the proceeds of any sales

5  contemplated by the Sale Agreements or other agreements the Schildts may

6  enter into regarding the Subject Property in the future;

7      2.    General and Special Damages;

8      3.    Supplemental relief in the form of attorney fees and costs,

9  pursuant to 28 U.S.C. § 2202 and § 27-8-313, MCA;

10      4.    Such further relief as this Court deems just and equitable;

11      5.    Plaintiff reserves the right to amend this Complaint to add a

12  claim of punitive damages, as provided in M.C.A. § 27-1-221(5).

13  **JURY DEMAND**

14  Plaintiff hereby demands trial by jury of all matters so triable.

15  Dated: July 31, 2024      MATT LAW OFFICE, PLLC

16            By: __/s/ Terryl Matt_____
             Terryl T. Matt, Esq.

17

1

**<u>VERIFICATION</u>**

2      I, Pardeep Kumar, declare as follows:

3          1.      I am a Plaintiff in the present case, a citizen of the United States

4 of America, and a resident of the State of Montana.

5          2.      I have personal knowledge of myself, my activities, and my

6 intentions, including those set out in the foregoing Verified Complaint, and

7 if called on to testify I would competently testify as to the matters stated

8 herein.

9          3.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury

10 under the laws of the United States of America that the factual statements

11 in this Verified Complaint concerning myself, my activities, and my

12 intentions are true and correct.

13      DATED this 31th day of July, 2024, at Valier, Montana.

14

15 _____

PARDEEP KUMAR

16

17